UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

KIM PARKMAN, et al.,

Plaintiffs,

v.                                                      Action No. 3:08–CV–690

CARLTON NICHOLAS ELAM, et al.,

Defendants.

<u>MEMORANDUM OPINION</u>

THIS MATTER is before the Court on Defendant's Motion to Dismiss Amended

Complaint (Docket No. 26), filed January 26, 2009.  For the reasons that follow, the Court

will GRANT the Motion with regard to the Constructive Fraud, Fraud and

Misrepresentation, Attorneys' Fees, and Punitive Damages claims.

## I.  <u>BACKGROUND</u>

The instant dispute arises out of the alleged breach of an agreement to collect, store, and

preserve a number of "straws" of semen ("samples") from three prize-winning Boykin spaniels:

Pocotaligo's Take a Mile Boss ("Boss"), Hi-Brass Harley ("Harley") and, Pocotaligo's Juke

("Juke") (collectively, the "Boykin Spaniels").  Plaintiff Kim Parkman ("Parkman") owns and

operates Pocotaligo Kennels, LLC (the "Kennel"), which is located in Sumter, South Carolina.

Plaintiffs Sandra Johnson ("Johnson") and Kevin Freeman ("Freeman") are clients of

Pocotaligo.  Parkman and Johnson co-owned Juke (later sold), Parkman and Freeman co-own

Harley, and Parkman alone owned Boss (now deceased).

1

In early 2007, Plaintiffs contacted Dr. Carlton Nicholas Elam ("Elam") regarding the desire to collect and freeze semen from the Boykin Spaniels. Plaintiffs sought to preserve the semen primarily for breeding purposes. Pursuant to an agreement between Plaintiff and Defendants, Dr. Elam and Elam Animal Hospital and Reproductive Center (the "Animal Hospital" or "EAHRC"), Elam agreed to collect, freeze, and preserve the samples from the Boykin Spaniels. Apparently, Elam provided "collection kits," "detailed instructions and supervision" to Dr. Kenneth Currie ("Currie"), a veterinarian located in South Carolina, who would collect and ship the samples to Elam in Powhatan, Virginia. (Am. Compl. ¶ 16.) The collection kits included a "special extender solution prepared by Dr. Elam." (Id.) Between February 21, 2007 and April 2007, Currie collected the samples using the collection kits and extender solution and sent the samples to Elam at EAHRC for freezing. Upon receiving the samples, Parkman states Elam informed her and Currie that one collection "had one of the highest motility rates he had ever seen." (Am. Compl. ¶ 18.) From the samples, a total of 31.5 straws were frozen.[1]

Elam reportedly observed blood in one of the samples taken from Harley. Over the phone, Elam diagnosed a prostrate infection, prescribed medication, and disposed of the ensanguined part of Harley's collection.

On or about May 1, 2008, one J.W. Wright of Markham, Virginia ("Wright") expressed interest in purchasing one of Boss's samples. Parkman requested that Elam send a

---

[1] Plaintiffs attribute fourteen straws to Juke, five-and-a-half straws to Harley, and twelve straws to Boss. (Am. Compl. ¶ 20.) Plaintiffs aver Juke provided semen unaccounted for in the fourteen straws frozen at EAHRC.

specification—or specific description of the sample's post-thaw motility rate—to Wright's veterinarian. Because Wright's dog had entered her estrus cycle, time constraints existed. Wright's dog's estrum notwithstanding, Elam informed Parkman and Currie two weeks later that all samples sent to him lacked viability. Elam reportedly "stated he had no idea what he did wrong" and apologized to both for the loss. (Id. at ¶ 25.) On or about May 25, 2008, Elam apparently offered to collect and freeze additional samples at no cost to Plaintiffs. By the time Elam made this offer, however, Boss had died, Juke had been sold, and Parkman and Freeman felt uncomfortable allowing collection from Harley. Instead, Parkman demanded that Elam ship the straws to another veterinary facility for analysis. Elam never complied with this demand. Elam has also failed to return the samples to Plaintiffs, as requested on numerous occasions.

In sum, Plaintiffs allege that Dr. Elam failed to use appropriate methods to freeze and store the semen, failed to keep appropriate records, and employed unlicensed veterinary technicians. As a result, Plaintiffs claim Elam has (1) breached the agreement formed between the parties; (2) breached his duty to provide reasonable veterinary care when collecting, storing, and freezing the samples and when diagnosing and treating Harley; (3) committed malpractice when freezing and storing the samples outside of generally recognized practices and procedures, providing a diagnosis via telephone, and employing unlicensed veterinary technicians during the freezing process in violation of Virginia law; (4) breached a bailment duty with regard to the samples delivered to him by Plaintiffs; (5) committed constructive fraud by representing to Plaintiffs that he had properly frozen the samples; (6) committed fraud and

3

misrepresentation

by representing to Plaintiffs that he had properly frozen the samples; and (7) converted Plaintiffs' property.[2]

According to Plaintiffs, artificial insemination has "an extremely high percentage of success." (Am. Compl. ¶ 22.) Parkman typically retains a property interest in the breeding rights of any puppy resulting from breeding with the Boykin Spaniels. Therefore, Plaintiffs claim damages including the cost to store and freeze the samples and lost profits likely from the sale of samples, puppies, and junior dogs.[3]

## II. STANDARD FOR MOTION TO DISMISS

A motion to dismiss tests the legal sufficiency of a complaint. Randall v. United States, 30 F.3d 518, 522 (4th Cir. 1994). In contemplating a 12(b)(6) motion, the Court must "take the facts in the light most favorable to the plaintiff," but "need not accept the legal conclusions drawn from the facts," and "need not accept as true unwarranted inferences, unreasonable conclusions, or arguments." Giarratano v. Johnson, 521 F.3d 298, 302 (citing E. Shore Mkts., Inc. v. J.D. Assocs. Ltd. P'ship, 213 F.3d 175, 180 (4th Cir. 2000)). Moreover, the Court need not "accept as true a legal conclusion couched as a factual allegation." Bell Atl. Corp. v. Twombly, 550 U.S. __, 127 S. Ct. 1955, 1965 (2007) (quoting Papasan v. Allain, 478 U.S. 265, 286 (1986)). In order for a claim or complaint to survive dismissal for failure to state a

---

[2] Plaintiffs have voluntarily withdrawn their cause of action under Virginia's Consumer Protection Act. (See Am. Compl. ¶¶ 46-50.)

[3] Plaintiffs approximate that a semen straw sells for $500 each, each instance of breeding typically requires two semen straws, Boykin spaniel puppies garner $1000-$1500 each, and "junior dogs"—a puppy kept and trained by Parkman—garner $4000-$6000 each. (Am. Compl. ¶ 22.)

claim, the plaintiff must "allege facts sufficient to state all the elements of [his or] her claim." Bass v. E.I. Dupont de Nemours & Co., 324 F.3d 761, 765 (4th Cir. 2003) (citing Dickson v. Microsoft Corp., 309 F.3d 193, 213 (4th Cir. 2002); Iodice v. United States, 289 F.3d 270, 281 (4th Cir. 2002)).  Discussing the pleading standard applicable under Rule 8, the Supreme Court advises that "[l]abels and conclusions will not do."  Twombly, 127 S. Ct. at 1959.  The Complaint must be dismissed if it does not allege "enough facts to state a claim to relief that is plausible on its face."  Twombly, 127 S. Ct. 1965.[4]

Claims of fraud, however, must satisfy a more stringent pleading standard.  "In alleging fraud or mistake, a party must state *with particularity* the circumstances constituting fraud or mistake."  Fed. R. Civ. P. 9(b) (emphasis added).  The Fourth Circuit has counseled that Plaintiff, in order to satisfy this heightened pleading standard, must state "the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby."  Harrison v. Savannah Westinghouse River

---

[4]The Court notes that Plaintiffs erroneously aver, "Courts should only dismiss complaints for failure to state a claim when, construing all allegations in the light most favorable to the plaintiff, it is clear that no set of facts could be proven under which the plaintiff would be entitled to relief."  (Pls.' Mem. Opp'n Mot. Dismiss Am. Compl. 3 (citing Hishon v. King & Spaulding, 467 U.S. 69, 73 (1984) (citing Conley v. Gibson, 355 U.S. 41, 45-46 (1957)) & Teacher's Retirement Sys. of L.A. v. Hunter, 477 F.3d 162, 170 (4th Cir. 2007)) (emphasis added by Plaintiffs).)  These cases all pre-date Twombly.  Although Plaintiffs cite Twombly in their opposition brief, they apparently failed to apprehend that in Twombly the Supreme Court sought to retire this specific language from the 12(b)(6) standard.  The Court stated, "[T]his famous observation has earned its retirement.  The phrase is best forgotten as an incomplete, negative gloss on an accepted pleading standard."  127 S. Ct. at 1969.

6

<u>Co.</u>, 176 F.3d 776, 783-84 (4th Cir. 1999).[5]  Failing to satisfy the pleading requirements under the applicable federal rule will result in dismissal of the claim.

### III.  DISCUSSION

Defendants move to dismiss Plaintiffs' claims for constructive fraud and fraud and misrepresentation, attorneys' fees, and punitive damages.[6]

### A.    Constructive Fraud Claim

The constructive fraud claim in its present state should be dismissed.  "[T]he elements of a cause of action for constructive fraud are a showing by clear and convincing evidence that a false representation of a material fact was made innocently or negligently, and the injured party was damaged as a result of his reliance upon the misrepresentation."  <u>Mortarino v. Consultant Eng'g Servs., Inc.</u>, 467 S.E.2d 778, 782 (<u>citing</u> <u>Evaluation Research Corp. v. Alequin</u>, 439 S.E.2d 387, 390 (Va. 1994); <u>Nationwide Mut. Ins. Co. v. Hargraves</u>, 405 S.E.2d 848, 851 (Va. 1991); <u>Kitchen v. Throckmorton</u>, 286 S.E.2d 673, 676 (Va. 1982)). "Additionally, '[a] finding of . . . constructive fraud requires clear and convincing evidence that one has represented as true what is really false, in such a way as to induce a reasonable person to believe it, with the intent that the person will act upon this representation.'"  <u>Id.</u> (quoting <u>Alequin</u>, 439 S.E.2d at 390); <u>Henderson v. Henderson</u>, 495 S.E.2d 496, 499 (1998) ("[T]he

---

[5]In <u>Harrison</u>, the Fourth Circuit also identifies four purposes Rule 9(b) serves:  "First, the rule ensures that the defendant has sufficient information to formulate a defense by putting it on notice of the conduct complained of. . . ; [s]econd, . . . to protect defendants from frivolous suits[;] third . . . to eliminate fraud actions in which all the facts are learned after discovery[; and to] protect[] defendants from harm to their goodwill and reputation."  176 F.3d at 784.

[6]Thus, Defendants do not attack, at this stage, Plaintiffs' claims for breach of contract, "veterinary malpractice," negligence, breach of bailment duty, or conversion.

evidence must show that the false representation was made so as to induce a reasonable person to believe it, with the intent that the person would act on this representation."). In order to survive a motion to dismiss, Plaintiffs must "plead, with the requisite degree of particularity, facts which support all the elements of a cause of action for constructive fraud." Mortarino, 467 S.E.2d at 782.

Quite simply, Plaintiffs fail to satisfy the pleading requirements with regard to the first element: false representation of a material fact. "It is well settled that a misrepresentation, the falsity of which will afford ground for an action for damages, must be of existing fact, and not the mere expression of an opinion." Cohn v. Knowledge Connections, Inc., 585 S.E.2d 578, 582 (Va. 2003); Mortarino, 467 S.E.2d at 781 (quoting Saxby v. S. Land Co., 63 S.E. 423, 424 (Va. 1909)). Addressing this element, Plaintiffs allege, "On numerous occasions Dr. Elam represented . . . that he properly froze approximately 31.5 straws of viable canine semen." (Am. Compl. ¶ 56.) Defendants dispute whether the statement itself is actually a statement of "existing fact," rather than a "mere expression of an opinion." (See Defs.' Reply Supp. Mot. Dismiss Am. Compl. 6 ("[W]hether something was done properly or improperly is a matter of subjective opinion, not fact.").) In a sense, Defendants are correct. This statement can be viewed as an opinion because, in general, different individuals may have different notions of the correct method of freezing dog semen. However, considering this statement in the context of performing veterinary services, the statement can be also considered a factual representation. That is, Elam claimed to follow a set of customary or accepted procedures when freezing or storing the samples. Taking this view of the statement, it is one that could be proven false.

8

Interpreting the statement in this manner is the better approach in light of the 12(b)(6) standard and Plaintiffs' pleadings. (<u>See, e.g.</u>, Am. Compl. ¶ 38 ("Dr. Elam . . . depart[ed] from recognized and generally[-]accepted standards . . . by . . . failing to freeze the semen properly . . . .").)

Finding the alleged statement to be one of fact, Plaintiffs still fail to plead sufficiently enough to avoid dismissal of this claim. First, Plaintiffs fail to state the times or the places these alleged misrepresentations took place, in accordance with <u>Harrison</u>. (<u>See</u> Am. Compl. ¶ 56.) The statement "on numerous occasions" does little, if anything, to provide fair notice to Defendants of Plaintiffs' factual basis for the constructive fraud claim. Second, as conceded at the hearing, Plaintiffs cannot rely on the fact that they did not receive the result they expected—that is, they later discovered the samples were not viable—to support the contention that Elam's representation was false. (<u>See id.</u>) Finally, Plaintiffs provide no other factual support for the bare contention that Elam's alleged statements to them were false. In short, on the allegations presented, the Plaintiffs may have supported a claim for negligence, but simply have not supported a plausible claim for constructive fraud.[7]

Thus, the claim will be DISMISSED.

B.      <u>Fraud and Misrepresentation Claim</u>

The fraud and misrepresentation claim will be dismissed for the same reasons as the

---

[7] Although Plaintiffs argue that discovery is necessary to plead this claim with more specificity (Pls.' Mem. Opp'n Mot. Dismiss Am. Compl. 9 (<u>citing</u> <u>Koken v. Aon Risk Servs., Inc.</u>, 2006 WL 90068, at *3 (E.D. Va. Jan. 13, 2006) ("[I]t is the function of discovery to fill in the details, and of trial to establish fully each element of the cause of action."))), this Court has previously stated that "federal courts are not to countenance 'fishing expeditions' on bare allegations of fraud." <u>Ginsberg v. Pomponio</u>, 95 F.R.D. 156, 159 (E.D. Va. 1982).

constructive fraud claim.  The primary difference between a claim for constructive fraud and

this claim is the intent element.  Hitachi Credit Am. Corp. v. Signet Bank, 166 F.3d 614, 628

(4th Cir. 1999).  "A plaintiff asserting a cause of action for actual fraud bears the burden of

proving

by clear and convincing evidence the following elements:  (1) a false representation, (2) of a

material fact, (3) made intentionally and knowingly, (4) with intent to mislead, (5) reliance by

the party misled, and (6) resulting damage to the party misled."  Richmond Metro Auth. v.

McDevitt Street Bovis, 507 S.E.2d 344, 346 (Va. 1998) (citing Evaluation Research Corp., 439

S.E.2d at 390) (internal quotation marks omitted).  To survive a motion to dismiss, this claim

must also satisfy Rule 9.  As with the constructive fraud claim, Plaintiffs leave Harrison

unsatisfied because they have not pleaded with particularity when or where Elam allegedly

made false representations about having properly frozen the samples and leave Twombly

unsatisfied because they do not provide a factual basis that pushes the actual fraud claim "from

conceivable to plausible."  127 S. Ct. at 1974.

Thus, the Fraud and Misrepresentation claim will be DISMISSED.

C.      Attorney's Fees and Punitive Damages Claims

1.      *Attorneys' Fees*

This remedy claim will be dismissed.  As Defendants point out, "Ordinarily, in the

absence of a statutory or contractual provision to the contrary, attorneys' fees are not

recoverable by the prevailing litigant."  Gilmore v. Basic Indus., Inc., 357 S.E.2d 514, 517 (Va.

1987) (citing Hiss v. Friedberg, 201 Va. 572, 577, 112 S.E.2d 871, 875 (1960); Norris v.

<u>Barbour</u>, 51 S.E.2d 334, 342 (Va. 1949)); <u>see also</u> <u>Alyeska Pipeline Serv. Co. v. Wilderness</u>

<u>Soc'y</u>, 421 U.S. 240, 247, 269 (1975) (vacating award of attorneys' fees where no "specific

exceptions to [the] general [American] rule" existed).  Plaintiffs offer neither a statutory or a contractual basis for seeking attorneys' fees.

Therefore, the claim for attorneys' fees will be DISMISSED.

2.    *Punitive Damages*

This remedy claim will also be dismissed.  "The purpose of punitive damages is to punish the wrongdoer and warn others." Flippo v. CSC Associates III, LLC, 547 S.E.2d 216, 223 (Va. 2001) (citing Smith v. Litten, 507 S.E.2d 77, 80 (Va. 1998)).  "Because punitive damages are in the nature of a penalty," in the Commonwealth of Virginia, "they should be awarded only in cases of the most egregious conduct."  Philip Morris Inc. v. Emerson, 368 S.E.2d 268, 283 (Va. 1988).  "Tortious conduct supports punitive damages if it demonstrates malice or 'negligence which is so willful or wanton as to evince a conscious disregard of the rights of others.'  'Willfulness and wantonness convey the idea of purpose or design, actual or constructive.'" Schieszler v. Ferrum Coll., 233 F. Supp. 2d 796, 805 (W.D. Va. 2002) (citing Booth v. Robertson, 374 S.E.2d 1, 3 (Va. 1988); Infant C. v. Boy Scouts of America, 391 S.E.2d 322, 327-28 (Va. 1990)).

Defendants argue that "[e]ven if the plaintiffs [sic] allegations were true, they do not support a claim that the defendants had a 'conscious disregard for' their rights, or acted with 'reckless indifference' toward them."  (Defs.' Reply Supp. Mot. Dismiss Am. Compl. 10.) Moreover, Defendants argue the facts alleged "[a]t the very best, . . . support that a mistake or error was made."  (Id.)  Plaintiffs do not identify exactly what alleged conduct warrants punitive damages.  They state only that their "claims for veterinary malpractice and fraud and

misrepresentation allege conduct that rises" to the level required.  (Pls.' Mem. Opp'n Mot. Dismiss Am. Compl. 11 (citing Booth, 374 S.E.2d at 3; Wilkins v. Peninsula Motor Cars, Inc., 587 S.E.2d 581 (Va. 2003)).)

Viewed in the light most favorable to Plaintiffs, nothing in the pleadings approaches the conduct deemed punishable in the cases cited by the parties.  See Booth, 374 S.E.2d 1 (granting punitive damages where plaintiff injured by intoxicated driver driving wrong way on interstate); Schieszler, 233 F. Supp. 2d 796 (affirming punitive damages where college official failed to intervene despite knowledge that student was suicidal); Wilkins, 587 S.E.2d 581 (affirming punitive damages where defendant sold used car represented to plaintiff as new). In the veterinary malpractice claim,[8] the allegations that Elam discarded one of Harley's samples and that EAHRC employed unlicensed technicians for the freezing and storing process may give the Court pause.  However, based on the Amended Complaint, Elam apparently discarded Harley's ensanguined sample after diagnosing him with a prostate infection.[9] Moreover, it is not clear that EAHRC's use of unlicensed technicians runs afoul of the statutes

---

[8] In the entirety, Plaintiffs allege (1) Elam diagnosed Harley with a prostate infection over the telephone, prescribed medicine for the dog, and subsequently discarded one of Harley's samples; (2) EAHRC failed to keep appropriate records documenting freezing and storing; (3) EAHRC failed to maintain an appropriate freezing environment; and (4) EAHRC utilized unlicensed technicians for the freezing and storing process in violation of 18 Va. Admin. Code § 150-20-140 (2008). (Am. Compl. ¶¶ 21, 43.)

[9] The Court makes no finding here as to whether the manner in which Elam diagnosed Harley meets the relevant standard of care.  The Court mentions the diagnosis only to assess the Amended Complaint's allegation of Elam's state of mind.

13

or regulations Plaintiffs cite.[10]  The conduct in the "Veterinary Malpractice" claim does not amount to "willful or wanton" behavior.[11]

Accordingly, the punitive damages claim will also be DISMISSED at this time.

## IV.  CONCLUSION

For the foregoing reasons, the Court will GRANT Defendants' Motion to Dismiss with regard to Plaintiffs' claims for Constructive Fraud, Fraud and Misrepresentation, Attorneys' Fees, and Punitive Damages.

It will be SO ORDERED.

_____ /s/
James R. Spencer
Chief United States District Judge


ENTERED this   17th   day of March 2009

---

[10] The Virginia Code § 54.1-3807 punishes "unprofessional conduct" by revocation or suspension of licenses and registration.  "Unprofessional conduct" is defined as:  "Practicing veterinary medicine . . . where an unlicensed person has the authority to control the professional judgment of the licensed veterinarian . . ."; "[p]racticing veterinary medicine . . . in such a manner as to endanger the health and welfare of his patients or the public, or being unable to practice veterinary medicine . . . with reasonable skill and safety"; or "[a]llowing unlicensed persons to perform acts restricted to the practice of veterinary medicine [or] veterinary technology . . . including any invasive procedure on a patient."  18 Va. Admin. Code § 150-20-140(2), (7), (10).  Nothing in the pleadings demonstrate that an unlicensed technician exerted "control over the professional judgment" Elam exercised, that Elam "endangered the health and welfare of his patients or the public," or that any unlicensed person "perform[ed] acts restricted to the practice of veterinary medicine [or] veterinary technology . . . including any invasive procedure."

[11] Since the Fraud and Misrepresentation claim has been dismissed, the Court need not analyze that claim as a basis for punitive damages.

14